# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

**23-30573**

_____

# UNITED STATES OF AMERICA,

Plaintiff-Appellee

# v.

# JOHNSON MOORE,

Defendant-Appellant

Appeal from the United States District Court for the
Western District of Louisiana
CRIMINAL NUMBER 2:20-CR-137-4

_____

## BRIEF ON BEHALF OF APPELLEE,
## THE UNITED STATES OF AMERICA

_____

BRANDON B. BROWN
United States Attorney
Western District of Louisiana

T. FORREST PHILLIPS
AL Bar # 3736E29R
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618
Attorneys for Plaintiff-Appellee

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents one issue regarding the district court's calculation of criminal history points, and one issue regarding a supposed discrepancy between the oral pronouncement of sentence and the written judgment. The parties' arguments regarding these issues are adequately set forth in their briefs. Accordingly, the United States respectfully submits that oral argument would not assist the Court.

# TABLE OF CONTENTS

**PAGES**

STATEMENT REGARDING ORAL ARGUMENT ....................................i

TABLE OF AUTHORITIES........................................................................iv

STATEMENT OF JURISDICTION...........................................................1

ISSUES ON APPEAL ...................................................................................2

STATEMENT OF THE CASE ....................................................................3

    *Offense Conduct*....................................................................................3

    *District Court Proceedings* ................................................................4

SUMMARY OF THE ARGUMENT ...........................................................8

ARGUMENT ..................................................................................................11

    I.    Moore likely invited the alleged criminal history score error. In the alternative, Moore cannot show reversible error under the plain error doctrine....................11

        A.    Standard of Review .......................................................11

        B.    Applicable Substantive Law ........................................12

        C.    Application of the Law to the Record ..........................13

**TABLE OF CONTENTS** *(continued)*

PAGES

1.    *The "invited error" doctrine forecloses relief* ...... 14

2.    *In the alternative, the district court did not plainly err in assigning the two criminal history points based on unrefuted PSR information* ........................................................ 16

II.    There is no discrepancy between the written judgment and oral pronouncement. Moore has waived any argument regarding the appropriateness of the "time served" language in both judgments, which, in any event, cannot be litigated on direct appeal with such an under-developed record ...................... 17

A.    Standard of Review ...................................................... 17

B.    Applicable Substantive Law ........................................ 18

C.    Application of the Law to the Record ........................... 19

CONCLUSION ........................................................................ 23

CERTIFICATE OF SERVICE and
      COMPLIANCE WITH ECF FILING STANDARDS ..................... 24

CERTIFICATE OF COMPLIANCE ....................................................... 25

# TABLE OF AUTHORITIES

**PAGES**

## FEDERAL CASES

*United States v. Abrego,*
    997 F.3d 309 (5th Cir. 2021) ..................................................... 17

*United States v. Bigelow,*
    462 F.3d 378 (5th Cir. 2006) ................................................. 17-18

*United States v. Brann,*
    990 F.2d 98 (3d Cir. 1993) ..................................................... 22-23

*United States v. Fernandez-Cusco,*
    447 F.3d 382 (5th Cir. 2006) ..................................................... 15

*United States v. Gagnon,*
    470 U.S. 522 (1985) ..................................................................... 18

*United States v. Harris,*
    702 F.3d 226 (5th Cir. 2012) ..................................................... 16

*United States v. King,*
    541 F.3d 1143 (5th Cir. 2008) ................................................... 11

*United States v. Lindell,*
    881 F.2d 1313 (5th Cir. 1989) ................................................... 20

*United States v. Olano,*
    507 U.S. 725 (1993) ..................................................................... 11

*United States v. Salazar,*
    751 F.3d 326 (5th Cir. 2014) ................................................ 12, 14

# TABLE OF AUTHORITIES *(continued)*

**PAGES**

*United States v. Serfass,*
    684 F.3d 548 (5th Cir. 2012) ....................................................... 10

*United States v. Stalnaker,*
    571 F.3d 428 (5th Cir. 2009) .................................................. 20-21

## FEDERAL STATUTES

18 U.S.C. § 1951(a) ............................................................................ 3-4

18 U.S.C. § 3231 ................................................................................. 1

18 U.S.C. § 3585(b) ....................................................................... 20-21

18 U.S.C. § 3742 ................................................................................. 1

28 U.S.C. § 1291 ................................................................................. 1

## U. S. SENTENCING GUIDELINES

U.S.S.G. § 4A1.1(a)........................................................................... 12

U.S.S.G. § 4A1.1(b) .......................................................................... 12

U.S.S.G. § 4A1.1(c)........................................................................... 12

U.S.S.G. § 4A1.2(d)(2)(A) ........................................................... 5-6, 12

U.S.S.G. § 4A1.2(k)(1) ..................................................................... 12

U.S.S.G. § 4A1.2, Application Note 11................................................. 12

U.S.S.G. § 5G1.3(c) .......................................................................... 20

## STATEMENT OF JURISDICTION

This appeal arises from a final judgment in a criminal case. The district court had subject matter jurisdiction under 18 U.S.C. § 3231. The district court entered the judgment of conviction on August 16, 2023. ROA.17. Moore filed a notice of appeal the same day, making the notice timely. ROA.748. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

# ISSUES ON APPEAL

I.  Did Moore invite the alleged "criminal history category" error by telling the district court that the juvenile adjudication and resulting confinement described in paragraph 40 of the PSR warranted application of the two criminal history points he now disputes on appeal? Alternatively, did the district court plainly err in relying on the PSR's unrebutted description of the juvenile adjudication's disposition when assigning two criminal history points?

II. Did the district court's written judgment conflict with its oral pronouncement of sentence? Also, given the two judgments are plainly identical, has Moore waived any unbriefed argument regarding the district court's refusal to "off-set" Moore's sentence by the time he had spent in federal custody before sentencing, which seems to be Moore's real dispute with the district court's judgment?

## STATEMENT OF THE CASE

This appeal follows the conviction by guilty plea of the defendant, Johnson Moore, for one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). ROA.836. On appeal, Moore challenges the district court's calculation of his criminal history score, urging that the district court erred in assigning criminal history points based on a juvenile adjudication. Moore also argues that a district court's written judgment conflicts with its oral pronouncement of sentence, though he fails to identify any inconsistencies.

### *Offense Conduct*

Moore's conviction results from his armed robbery of a jewelry store near Lake Charles, Louisiana. ROA.841. On June 8, 2020, Moore and his three co-defendants entered a high-end jewelry store wearing ski masks and carrying a gun and sledgehammers. ROA.841. One of Moore's co-defendants pointed the gun at employees, while two other members of the robbery party (including possibly Moore himself) used sledgehammers to smash a display case containing Rolex watches. ROA.841. Moore and his co-defendants then stuffed as many watches as possible in a backpack before fleeing the store. ROA.828. Moore and his

co-defendants untimely stole 34 Rolex watches, worth roughly $350,000. ROA.828.

Unbeknownst to Moore and his co-defendants, one of the Rolex's display pillows contained a hidden GPS tracking device. ROA.829. Police tracked this stolen watch, ultimately finding the backpack containing the stolen watches. ROA.930. Police found Moore nearby, hiding behind a house. ROA.829. An employee at the jewelry store later identified Moore as someone that had visited the store two days earlier and asked suspicious questions about the soon-to-be-stolen Rolex watches; this identification was based on the employee's description of Moore's unique tattoos. ROA.841.

### District Court Proceedings

On July 8, 2020, the grand jury returned an indictment charging Moore and his co-defendants with one count of interference with commerce by robbery ("Hobbs Act" robbery), in violation of 18 U.S.C. § 1951(a). ROA.34. On January 18, 2023, Moore pleaded guilty to the indictment's lone count. ROA.771.

Prior to sentencing, the United States Probation Office prepared a presentence report ("PSR"). ROA.236. Relevant to this appeal, the PSR

assigned two criminal history points each for two separate "juvenile sentences" Moore served after his probation was revoked for a pair of Texas-based juvenile adjudications. ROA.845–86; *see also* U.S.S.G. § 4A1.2(d)(2)(A) (assigning two criminal history points for each "juvenile sentence" of at least 60 days imposed within five years of the instant offense conduct).[1] Specifically, Moore had a 2013 juvenile adjudication for theft (paragraph 39 in the PSR; hereinafter the "paragraph 39 offense") and a 2014 juvenile adjudication for criminal property damage (paragraph 40 in the PSR; hereinafter the "paragraph 40 offense"). ROA.845–46.

Moore initially received the juvenile equivalent of probation for each of these "convictions." ROA.845–46. After committing multiple new crimes, however, Moore had his juvenile probation revoked for both the paragraph 39 and 40 offenses. ROA.845–46. Moore was "committed to the Texas Juvenile Justice Department until his 19th birthday," which resulted in him serving a period of confinement at a juvenile camp

---

[1] Moore, only 21 at the time of the jewelry store robbery, had an extensive criminal history, which began at age 13. This included multiple juvenile and adult convictions for similar theft/robbery offenses. ROA.845–48. Moreover, at the time of his arrest in this case, Moore was pending trial for seven separate similar robbery incidents, dating back to 2017 and spread out across Texas and Florida. ROA.861. In essence, Moore had started a career in robbery. ROA.861.

5

facility. ROA.845–46. The revocations were based on different violation conduct: Moore had his probation revoked for the paragraph 39 offense because of a theft that occurred in February 2015, and had his probation revoked for the paragraph 40 offense because of arrest-evasion conduct that occurred in September 2014. ROA.845–46. These criminal history points (along with others uncontested on appeal) resulted in Moore having a criminal history category of V, which, combined with his total offense level of 25, resulted in a guideline range of 100 to 125 months' imprisonment. ROA.859.

Moore objected to the PSR's calculation of his criminal history points based on these juvenile sentences. ROA.874. Specifically, Moore argued that his confinement at the secure juvenile facility was only for the paragraph 40 offense, with Moore claiming that he completed his juvenile sentence for the paragraph 39 offense after being released from "the custody of his mother" in July 2014. ROA.845, ROA.874. According to Moore, this meant that his period of confinement for the paragraph 39 offense fell outside § 4A1.2(d)(2)(A)'s five-year window for counting sentences based on juvenile adjudications. ROA.874. Importantly, in making this argument, Moore conceded that the two criminal history

points applied for the offense described in paragraph 40 were appropriate, unrelated objections notwithstanding. ROA.874 ("Defendant should only be attributed points for the offense set forth in Paragraph 40.").[2]

The Probation Office responded to Moore's objection, specifying that Texas state court documents "specifically stated" that Moore was still serving a sentence of juvenile probation for the paragraph 39 offense after being committed to the custody of his mother. ROA.907. The United States Probation Office's response further stated that these same state court documents showed that Moore's new criminal conduct (again, a February 2015 theft/false information crime), resulted in this still-active probation being revoked and Moore being committed to the custody of the Texas Juvenile Justice Department to serve time at a secure juvenile facility. ROA.907.

---

[2] Moore did argue separately that his time in the custody of the Texas Juvenile Justice Department was not really "confinement" because the PSR was unclear about whether he was free to leave the "AMI Kids Camp" where he completed his revocation sentences. ROA.873. This objection was overruled after Probation clarified that it was a "secure facility," where juveniles are not free to leave. ROA.906. Moore does not dispute this on appeal.

The district court held a sentencing hearing on August 10, 2023. ROA.794. The district court overruled Moore's objections, and sentenced Moore to a guideline sentence of 125 months' imprisonment. ROA.796, ROA.807. The district court stated that this sentence included "credit for time served in federal custody since June 24, 2020." ROA.807. The district court also stated that the sentence would run "concurrent" with any potential state sentence. ROA.809. The district court's written judgment followed soon after and contained an identical explanation of Moore's sentence. ROA.743 ("The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 125 month(s) as to count 1 Terms to run concurrent to any state sentence the defendant may receive, and credit for time served in Federal Custody since June 24, 2020.").

Moore filed a timely notice of appeal. ROA.748.

## SUMMARY OF THE ARGUMENT

This Court should affirm Moore's sentence. First, the district court did not err in assigning two criminal history points for the juvenile adjudication listed in paragraph 40 of the PSR. As an initial matter, the invited error doctrine likely applies. Moore reassured the district court

8

that the PSR correctly applied these two points when litigating a different criminal history dispute. Moore cannot take the opposite position on appeal. Regardless, the district court did not "clearly or obviously" err in assigning the two criminal history points. The PSR contained a detailed factual summary of the events leading up to the revocation and Moore's eventual sentence of confinement for the paragraph 40 offense. Moore never disputed these facts in connection with paragraph 40, much less offered evidence undermining the PSR's reliability. Accordingly, the district court did not err in assigning two criminal history points based on the revocation sentence for the paragraph 40 offense.

Similarly, the district court did not err—much less "clearly or obviously" so—by issuing a written sentencing judgment that supposedly conflicted with its oral pronouncement. The district court's written judgment and oral pronouncement are, in a word, identical: both indicate that Moore received a sentence of 125 months' imprisonment, with "credit for time served" since Moore's entry into federal custody on June 24, 2020, and with the sentence to run concurrently with any prospective state sentence. Although unclear, in arguing an oral

pronouncement/written judgment "discrepancy," Moore seems to really take issue with the district court's refusal to offset sua sponte his sentence by the 37.5 months Moore spent in US Marshals' custody leading up to sentencing. This unbriefed issue—which intersects with the ripeness doctrine and post-conviction administrative law procedures for calculating "time served"—is waived. In any event, it is not ripe for review since, by Moore's own admission, his state case remains pending (meaning it is still entirely possible the state case is resolved in a way that causes BOP to give Moore "credit" towards his federal sentence for the period leading up to his federal sentencing). At best, the plain error standard would apply to this unbriefed issue, and Moore cannot show the district court "clearly or obviously" erred in not sua sponte offsetting Moore's sentence, potentially granting Moore a multi-year boon if his state case is dismissed or resolved with a shorter sentence.

# ARGUMENT

**I.**    **Moore likely invited the alleged criminal history score error. In the alternative, Moore cannot show reversible error under the plain error doctrine.**

## A.    Standard of Review

This Court reviews the district court's application of the sentencing guidelines de novo and its factual findings for clear error. *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012). Where, however, a defendant fails to object in the district court or alters the basis for his objection on appeal, this Court instead reviews only for plain error. *See United States v. King*, 541 F.3d 1143, 1144 (5th Cir. 2008). "Plain error" is (1) error, (2) that is clear or obvious, and (3) that affects substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). Even if these conditions are satisfied, however, this Court should not exercise its discretion to correct a forfeited error unless the forfeited error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.*

Finally, where a defendant asks a district court to commit the action that he later alleges was in error, the invited error doctrine applies, and this Court will not consider the defendant's arguments

11

absent a "manifest injustice." *United States v. Salazar*, 751 F.3d 326, 332 (5th Cir. 2014).

## B.    Applicable Substantive Law

The Sentencing Guidelines assign criminal history points based on the length of sentence resulting from past convictions. Relevant here, § 4A1.2(d)(2)(A) assigns two criminal history points "for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." U.S.S.G. § 4A1.2(d)(2)(A). Elsewhere, the guidelines specify that any term of confinement resulting from revocation of parole is considered a term of confinement for the underlying offense. U.S.S.G. § 4A1.2(k)(1) ("In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable."). These rules benefit the defendant, since they prevent a defendant from ever receiving more than 3 criminal history points combined for an original sentence and any ensuring probation/parole

revocations. *See* U.S.S.G. § 4A1.2, Application Note 11 (noting that "[b]y this approach, no more than three points will be assessed for a single conviction, even if probation or conditional release was subsequently revoked").

## C.    Application of the Law to the Record

Moore urges that the district court erred in assigning two criminal history points based on the probation revocation sentence (i.e., placement into the custody of the Texas Juvenile Justice Department, which resulted in confinement at the AMI kids camp) for the paragraph 40 juvenile adjudication. Confusingly, this is the exact opposite of the position Moore took in the district court, where he conceded two criminal history points applied because of the paragraph 40 offense but disputed the same for the paragraph 39 offense. Now, Moore argues that the district court should have attributed his "confinement sentence" at AMI kids camp to only the paragraph 39 offense, and that his revocation sentence for the paragraph 40 offense really ended when he was "transferred to his mother's custody" in July 2014. *See* Moore's Brief, 10. Again, this is an inverted version of the argument Moore made in the

district court, with Moore simply subbing out the paragraph 39 offense for the paragraph 40 offense.

### 1.    The "invited error" doctrine forecloses relief.

This argument fails. In fact, this Court need not even consider its merits. This is because Moore invited the alleged error he now complains about on appeal, thus foreclosing appellate review absent a "manifest injustice." *See Salazar*, 751 F.3d at 332 ("A defendant may not complain on appeal of errors that he himself invited or provoked the [district] court . . . to commit."). Again, in the district court Moore represented that his confinement at the AMI kids camp resulted from only the paragraph 40 offense, urging he had already completed his sentence for the paragraph 39 offense. In the process, Moore expressly conceded that the district court should apply two criminal history points for the paragraph 40 offense. ROA.874 ("Defendant should only be attributed points for the offense set forth in Paragraph 40.").

Now, on appeal, Moore has taken the exact opposite position: the district court was correct to apply two criminal history points for the paragraph 39 offense but erred in applying points for the paragraph 40 offense. *See* Moore's Brief, at 13 ("The district court properly found that

Mr. Moore's sentence . . . [for] ¶ 39 extended to within 5 years of the instant offense. . . . However, the district court clearly erred by also adding two points to the criminal history point total for incident in ¶ 40."). Moore offers no explanation for this total flip in position. Similarly, the record offers no rationale.[3] Accordingly, the "invited error" doctrine applies, and this Court should decline to review Moore's "criminal history score" argument. *Cf. United States v. Fernandez-Cusco*, 447 F.3d 382, 384 (5th Cir. 2006) (stating that, when a defendant affirmatively recognized that an enhancement was properly applied, he arguably invited any error by the court in its application). To put it simply: the district court cannot be faulted for accepting Moore's representation that he deserved two criminal history points for the paragraph 40 offense, and thus declining to conduct the same rigorous review of its basis as it did for the paragraph 39 offense.

---

[3] The PSR made clear that probation revocation for the paragraph 39 and 40 offenses resulted from different violation conduct (i.e., September 2014 evading arrest conduct vs. February 2015 theft/false information conduct). ROA.845–46.

> **2.    *In the alternative, the district court did not plainly err in assigning the two criminal history points based on unrefuted PSR information.***

But even setting aside the invited error doctrine, Moore's argument still fails. This is because the PSR contained an extensive factual summary of the circumstances underpinning the revocation and resulting confinement for the paragraph 40 offense, none of which Moore contested in the district court. *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (stating that a district court may adopt the facts contained in a PSR without further inquiry if those facts have "a sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable"). The PSR specified that Moore had his probation revoked for the paragraph 40 offense after committing the new crime of evading arrest in September 2014, and that, because of this revocation, Moore ultimately served a sentence of confinement of more than 60 days at the AMI kids camp. ROA.846.

Again, Moore never disputed this factual basis in the district court, much less offered any evidence refuting the PSR's description; thus, his forfeited appellate claim that the "government presented no evidence" to

support the paragraph 40 criminal history points is irrelevant. *See United States v. Abrego*, 997 F.3d 309, 312 (5th Cir. 2021) ("[T]he defendant bears the burden of showing that the information in the PSR is "materially untrue, inaccurate or unreliable. Mere objections to the PSR do not suffice as competent rebuttal evidence."). For this reason, even if the invited error doctrine does not apply, the district court still did not err—much less "clearly or obviously" so under the plain error doctrine—in assigning two criminal history points based on the paragraph 40 offense.

**II.    There is no discrepancy between the written judgment and oral pronouncement. Moore has waived any argument regarding the appropriateness of the "time served" language in both judgments, which, in any event, cannot be litigated on direct appeal with such an under-developed record.**

## A.    Standard of Review

This Court normally reviews arguments made for the first time on appeal for plain error only. *See United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006). This Court, however, will review de novo a defendant's argument that the district court's written judgment conflicts with the oral pronouncement of sentence where the record shows that the

defendant had no opportunity to make the objection in the district court. *See id.*

For the reasons discussed below, this "de novo" carve out is irrelevant here, since Moore identifies no conflict in the written judgment and oral pronouncement. Instead, he presents an under-briefed argument about the district court's refusal to "off-set" his sentence to account for a potential state sentence. This argument is likely waived; at best, it is reviewed only for plain error.

## B.   Applicable Substantive Law

A defendant has a constitutional and statutory right to be present at sentencing and make objections. *See United States v. Gagnon*, 470 U.S. 522, 526 (1985). As a result, where a district court's written sentencing judgment differs from its oral pronouncement of sentence, the oral pronouncement's terms of sentence must control, since that is the judgment for which the defendant was present. *See Bigelow*, 462 F.3d at 382 ("If the written judgment conflicts with the sentence pronounced at sentencing, that pronouncement controls.").

## C.    Application of the Law to the Record

Moore argues that the district court's oral pronouncement conflicts with its written judgment. Again, Moore's argument on this point is confusing: Moore argues that the oral pronouncement imposed a sentence of 125 months, concurrent with any state sentence, with credit for time served in federal custody since June 24, 2020. *See* Moore's Brief, at 16. Moore then summarizes that written judgment's identical terms: a sentence of 125 months, concurrent to any state sentence, with credit for time served in federal custody since June 24, 2020. *See* Moore's Brief, at 17–18.

This argument fails, regardless of the standard of review. In short, Moore has not identified any inconsistency between the written judgment and oral pronouncement. Indeed, both are, by all accounts, identical, with each consisting of (1) a sentence of 125 months; (2) credit for time served since entering federal custody on June 24, 2020; and (3) the benefit of running concurrently with any state sentence.  There is no inconsistency here; the same sentence appears in both the sentencing transcript and the oral pronouncement.

Moore really seems to take issue with the presence of "time served" language in the written judgment and oral pronouncement, preferring that the district court had simply offset his sentence (pursuant to U.S.S.G. § 5G1.3(c)) by the roughly 38 months he spent in federal custody before sentencing to avoid any possibility that BOP does not award him that credit under 18 U.S.C. § 3585(b) because it instead goes towards service of his yet-imposed and still speculative state sentence. *See* Moore's Brief, at 17; *see also* 18 U.S.C. § 3585(b) (stating that BOP will give a defendant "credit on prior custody" only where it is not applied to a different sentence).

Moore has waived this argument by not briefing it on the merits. *See United States v. Lindell*, 881 F.2d 1313, 1326 (5th Cir. 1989) (stating that failure to brief an issue adequately constitutes waiver). Moore's brief contains only a passing reference to 18 U.S.C. § 3585(b) and no reference to any relevant case law, instead pursing his misguided oral pronouncement/written judgment conflict argument. Similarly, Moore never grapples with the "plain error" standard of review that would have to apply to any argument that the district court should have "off-set" his sentence by the period he had already served in state custody. *United*

*States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009) (holding that defendant's failure to provide citations to relevant case law constituted waiver for failure to adequately brief).

Regardless, the district court had good reason for declining this "offset" approach, much less not invoking it sua sponte: at the time of his federal sentencing, neither the district court nor the parties knew how Moore's state charges would resolve; indeed, according to Moore, the state charges are still pending today. *See* Moore's Brief, at 16. Accordingly, it is entirely possible that Moore's state charges are eventually dismissed, meaning Moore would have gained a multi-year windfall had the district court proactively "off-set" his federal sentence by the 37.5 months he spent in federal custody awaiting sentencing. Conversely, it is possible that any eventual state sentence does not award Moore credit for time he spent in federal custody resolving his federal charges. Under this scenario, Moore would receive his "time served" credit towards his federal sentence under 18 U.S.C. § 3585(b), since the statute's prohibition on double counting would not be implicated.

21

This same uncertainty about Moore's eventual state sentence also dooms his claim under the "plain error" doctrine. This is because the district court cannot have "clearly or obviously" erred in not offsetting Moore's sentence when, even today, it remains unsettled whether Moore will have to serve any sentence in connection with his state charges, or whether BOP will instead credit Moore for the time he spent in federal custody pending his sentencing for the instant conviction.

To summarize: there is no conflict between the written judgment and oral pronouncement since both contain the exact same sentence: 125 months' imprisonment, to be served concurrently with any potential state sentence, and with credit for "time served" since June 24, 2020. Moore's "oral pronouncement/written judgment" argument is really a cursorily briefed claim that the district court should have offset his sentence by the 37.5 months he served in federal custody pending sentencing. This argument is waived for lack of briefing and, in any event, is too speculative to be resolved on direct appeal. *See, e.g.*, *United States v. Brann*, 990 F.2d 98, 103-04 (3d Cir. 1993) (finding Brann's claim that the district court erred in refusing to grant him credit for time served in pretrial detention "not ripe," because "[t]he Attorney General has the

power to grant credit for pretrial custody in the first instance," and "Brann must first exhaust his administrative remedies in this matter by seeking any allowable credit for his pretrial detention from the Attorney General").

## CONCLUSION

This Court should affirm the district court's judgment in all respects.

Respectfully submitted,

BRANDON B. BROWN
United States Attorney

BY:  *s/ T. Forrest Phillips*

T. FORREST PHILLIPS
AL Bar # 3736E29R
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

## CERTIFICATE OF SERVICE and
## COMPLIANCE WITH ECF FILING STANDARDS

I hereby certify that a copy of the foregoing Brief on Behalf of Appellee, The United States of America, was filed electronically with the Fifth Circuit Court of Appeals using the electronic filing system. Notice of this filing will be sent to counsel of record either by operation of the court's electronic filing system and/or via United States Mail to:

Ms. Elizabeth C. Dougherty
DOUGHERTY LAW FIRM, L.L.C.
P. O. Box 80419
Baton Rouge, LA 70898-0419.

In addition, I hereby certify that: (1) all required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and, (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Lafayette, Louisiana, this the  23rd  day of January, 2024.


BY:  s/ T. Forrest Phillips

T. FORREST PHILLIPS
AL Bar # 3736E29R
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(337) 262-6618

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    (a)    This brief contains **<u>4,064</u>** words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    (a)    This brief has been prepared in a proportionally spaced typeface using:

        Software Name and Version – **<u>Microsoft Word Office 365</u>**;

        in Typeface Name and Font Size - **<u>Century Schoolbook 14 pt.</u>**

<u>*s/T. Forrest Phillips*</u>                <u>January 23, 2024</u>

T. FORREST PHILLIPS               Date
AL Bar # 3736E29R
Assistant United States Attorney